OPINION
Defendant-appellant David A. Witschi, Jr. appeals his conviction and sentence from the Morrow County Court of Common Pleas on two counts of rape in violation of 2907.02(A)(1)(b), one count of felonious sexual penetration in violation of R.C. 2907.12, one count of sexual battery in violation of R.C. 2907.03(A)(5), and one count of attempted rape in violation of R.C. 2907.02 and R.C.2923.02. Plaintiff-appellee is the State of Ohio. STATEMENT OF THE FACTS AND CASE On January 13, 1997, the Morrow County Grand Jury indicted appellant on thirty (30) counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), twenty (20) counts of felonious sexual penetration in violation of R.C.2907.12(A)(1)(b), thirty (30) counts of rape in violation of R.C.2907.02(A)(1)(b), eight (8) counts of sexual battery in violation of 2907.03(A)(5) and two (2) counts of attempted rape in violation of R.C. 2907.02(A)(2) and R.C. 2923.02. The Bill of Particulars alleged that appellant had sexual activity with Crystal Doe from 1992, when Crystal was nine years of age, to 1996 and attempted sexual activity with Corey Doe in July of 1996, when she was eleven years old. At his arraignment on January 17, 1997, appellant entered a plea of not guilty to the charges contained in the indictment. Thereafter, a jury trial commenced on September 8, 1997. After a mistrial was declared on September 9, 1997, after Corey's father assaulted appellant in the courtroom, the trial was rescheduled to December 8, 1997. The trial was later continued to January 28, 1998. At the conclusion of appellee's case, counsel made a Criminal Rule 29 motion for a directed verdict which was granted by the trial court in relation to 70 counts of the indictment. The remaining 20 counts, which consisted of 10 counts of gross sexual imposition, 3 counts of felonious sexual penetration, 5 counts of rape, and one count each of sexual battery and attempted rape, went to the jury for deliberations. The jury found appellant guilty of one count of felonious sexual penetration (count 49 of the Indictment) in violation of R.C.2907.12, an aggravated felony of the first degree, two counts of rape (counts 69 and 73 of the Indictment) in violation of R.C.2907.02, an aggravated felony of the first degree, one count of sexual battery (count 85 of the Indictment) in violation of R.C.2907.03(A)(5), a felony of the third degree, and one count of attempted rape (count 89 of the Indictment) in violation of R.C.2907.03(A)(5) and 2923.02, a felony of the second degree and not guilty of the remaining counts. With respect to the felonious sexual penetration and rape offenses, the jury also found that such offenses had been committed with the use of force. For such reason, the following evidence, which was adduced at trial, is relevant only as to the facts surrounding the charges brought in counts 49, 69, 73, 85 and 89. Crystal, the primary victim in this case, was born on March 29, 1983. After her parents separated in the late 1980's, Crystal's mother began dating the appellant who later moved in with Crystal, her mother and Crystal's two brothers. During the summer of 1993, appellant along with Crystal and her family moved from Marengo to the Johnsville Trailer Court. At trial, Crystal testified that between January 1, 1996, and March 29, 1996, a period covered by count 49 of the Indictment, appellant placed his mouth on her chest and inserted his fingers into her vagina while she was in the living room asleep. Crystal, who stated that she was 13 at the time, testified that appellant stopped when he thought he heard one of her brothers getting up. Appellant threatened to kill Crystal if she told anyone of the incident. Count 69 of the Indictment alleged that appellant, during the period from June 1, 1994, and March 29, 1996, had raped Crystal by compelling her to submit by force or threat of force. The Bill of Particulars narrowed the time from between June 5, 1995, and July 4, 1995. At the trial, Crystal testified that during the period from June 5, 1995, through July 4, 1995, appellant who came out of the back bedroom and into the living room, put his mouth on her vagina while her mother was at work. After Crystal hit appellant and pulled his hair in an attempt to get away from him, he called her a "bitch" and then said "Fuck it" before stomping off. Transcript of Proceedings at 63-64. With respect to the rape conviction contained in count 73 of the Indictment, which the Indictment alleged occurred between October 1, 1995, and December 1, 1995, and the Bill of Particulars indicated occurred between October 24, 1995, and December 1, 1995, Crystal testified that around the time of Halloween, appellant "grabbed a hold of me and took me in the back bedroom and he pulled down my underwear and shorts and had his mouth on my vagina and was touching my breast." Transcript of Proceedings at 67. At the time, Crystal's mother was at work and her two brothers were in bed. After Crystal threatened to scream, appellant told her that "he was going to kill me and that he would tell mom that I'm the one who wanted him to do all this stuff and everything." Transcript of Proceedings at 68. Crystal also testified as to the sexual battery alleged in count 85 of the Indictment, which allegedly occurred between July 1, 1996, and July 31, 1996. Appellant, Crystal testified, he pulled her into a bedroom after she got up during the night to go to the bathroom, forced himself on top of her, and pulled down her underwear and inserted his penis into her vagina. At the time, Crystal's mother was at work and her brothers were at home. Crystal, who testified that she was 13 years old at the time, stated that appellant told her he wanted her to have his baby. As to the attempted rape alleged in count 89 of the Indictment, which the Bill of Particulars alleged took place between July 1, 1996, and July 31, 1996, both Crystal and Corey testified. During such period of time, Crystal had her friend Corey spend the night. Since both of Crystal's brothers were gone for the evening, the two girls were alone with appellant in the trailer. While Crystal and Corey were watching television, appellant came out of a back bedroom wrapped only in a blanket and put a pornographic movie into the VCR. After the two girls refused appellant's request to act out what was going on in the movie, appellant "grabbed a hold of Corey and put her on his lap". Transcript of Proceedings at 74. After Corey, with Crystal's help, managed to get away from appellant, appellant, who told Corey that he wanted her to "fuck him", grabbed a hold of Corey again, pulled off her jeans and "tried to stick his penis in her vagina". Transcript of Proceedings at 75, 76. While Corey testified that appellant was unable to have intercourse with her since she had her underwear on, Crystal testified that appellant pulled Corey's underwear off. Once again, Corey was able to get away from appellant with Crystal's help. Appellant then pulled down Crystal's shorts and underwear and unsuccessfully attempted to have sexual intercourse with her. Corey testified that at the time of the above incident she was 11 or 12. From July of 1996 until December of 1996, there were no further sexual incidents involving appellant and either Crystal or Corey. In December of 1996, after appellant refused to let Crystal go to a school function, Crystal told her aunt of the above sexual incidents. As is stated above at the conclusion of the evidence, the jury found appellant guilty of two counts of rape in violation of R.C. 2907.02(A)(1)(b) (counts 69 and 73), one count of felonious sexual penetration in violation of R.C. 2907.12 (count 49), one count of sexual battery in violation of R.C. 2907.03(A)(5) (count 85), and one count of attempted rape in violation of R.C. 2907.02 and 2923.02 (count 89). With respect to the two counts of rape and the count of felonious sexual penetration, the jury found that such offenses had been committed with the use of force. On February 4, 1998, appellant was sentenced to three life terms in prison on the rape convictions and the felonious sexual penetration conviction, five years on the sexual battery conviction and eight years on the attempted rape conviction. All of the sentences were to be served concurrently. A Journal Entry of Sentencing was filed on February 11, 1998. It is from his conviction and sentence that appellant prosecutes his appeal, raising the following assignments of error:
 I THE JURY'S FINDING AS TO THE `FORCE' ASPECT OF THE RAPE AND FELONIOUS SEXUAL PENETRATION CONVICTIONS IS NOT SUPPORTED BY THE EVIDENCE PRESENTED.
 II AS TO THE DEFENDANT'S CONVICTION OF FELONIOUS SEXUAL PENETRATION, THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE VICTIM WAS UNDER THE AGE OF THIRTEEN AT THE TIME THE ALLEGED CRIMINAL CONDUCT TOOK PLACE.
 III THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT DID NOT BIFURCATE THE DEFENDANT'S CHARGES INTO TWO SEPARATE TRIALS.
 IV DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 V DEFENDANT'S CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
Appellant, in his first assignment of error, maintains that the jury's findings on the element of force in the rape and felonious sexual penetration convictions are not supported by the evidence. We disagree. Appellant was convicted on two counts (Counts 69 and 73) of rape in violation of R.C. 2907.02(A)(1)(b). R. C. 2907.02
states, in relevant part, as follows: "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 (2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
 (B) Whoever violates this section is guilty of rape, a felony of the first degree. . . . If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."
Additionally, appellant was found guilty of one count of felonious sexual penetration (count 49) in violation of R.C. 2907.12. A conviction for felonious sexual penetration also carries a life sentence if the element of force is found and the victim is under 13. Since, with respect to both rape counts and the felonious sexual penetration count, the jury found that appellant had used force, appellant was sentenced to three life sentences. R.C.2901.01(A) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing". Appellant specifically argues that since there was no testimony at trial as to violence, compulsion, or physical constraint and since there was no evidence of force "beyond that inherent in the crime itself", the jury's finding as to force was not supported by the evidence. However, "a person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." State v. Dye (1998), 82 Ohio St.3d 323, syllabus. Provided that it can be shown that the victim's will was overcome by fear or duress, the element of force can be established. State v. Eskridge (1988), 38 Ohio St.3d 56, 58-59. A threat of force can also be inferred from the circumstances surrounding the sexual conduct. State v. Schaim (1992). 65 Ohio St.3d 51. At the time the incidents in question began, Crystal was approximately 11 years old whereas appellant was in his thirties. Appellant, who was Crystal's mother's boyfriend, lived with Crystal and her family. At trial, Crystal testified that appellant, who babysat her while her mother worked, had authority to discipline her and that his authority was similar to that of a father. If she did not obey appellant, Crystal would get hit. Thus, appellant stood in a position of authority as to Crystal. Moreover, there is ample evidence that Crystal's will was overcome by fear or duress. Testimony was adduced at trial that appellant had a violent nature and that, after moving in with Crystal's mother, he frequently assaulted Crystal's mother while Crystal was present. At trial, Crystal testified that appellant began sexually assaulting her in 1992 when she was eight and that he threatened to kill her if she told anyone of the incidents of sexual assault. Appellant also threatened to kill Crystal's family. While, as appellant correctly notes, the threats were not made until after the individual assaults in the case sub judice, the evidence clearly establishes that Crystal, based on the prior incidents of sexual abuse starting in 1992 and appellant's abusive treatment of her mother, knew of appellant's violent and abusive nature prior to any of the incidents. Since, based on the above, we clearly find sufficient evidence of force. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant argues that, as to the charge of felonious sexual penetration contained in count 49 of the Indictment, the State failed to prove beyond a reasonable doubt that the victim was under the age of thirteen when the alleged incident took place. The Bill of Particulars in this matter indicates that the incident resulting in count 49 occurred between January 1, 1996, and April 1, 1996. At trial, the victim in this matter testified that the felonious sexual penetration alleged in such count occurred when she was 13. While appellee concedes that there has been a failure of proof on the issue of age, appellee argues that the State presented sufficient evidence to sustain a charge of felonious sexual penetration. We disagree. R. C. 2907.12, which was repealed effective September 3, 1996, provides in relevant part, as follows: "(A)(1) No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person. (2) No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another when the offender purposely compels the other person to submit by force or threat of force. (B) Whoever violates this section is guilty of felonious sexual penetration, an aggravated felony of the first degree. If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life. In the case sub judice, appellant was indicted for violating R.C.2907.12(A)(1)(b), which requires that the victim be less than thirteen years of age, rather than with violating R.C.2907.12(A)(2). The Bill of Particulars filed on June 5, 1997, also states that appellant violated R.C. 2907.12(A)(1)(b). Moreover, in instructing the jury, the trial court stated as follows: "If you find that the State proved beyond a reasonable doubt all the essential elements of the offense or offenses of Felonious Sexual Penetration, your verdict must be guilty as to such count or counts, according to your findings. If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense or offenses of Felonious Sexual Penetration, then; your verdict must be not guilty as to such count or counts, according to your findings. In the event you find the defendant guilty of Felonious Sexual penetration, you will continue your deliberations to determine whether or not the defendant purposely compelled the alleged victim to submit by force or threat of force. This is what's known as a sentence enhancer, if that finding is made." Transcript of Proceedings at 297-298.
The victim's age (under 13) is an element of the offense of felonious sexual penetration in violation of R.C. 2907.12(A)(1)(b), but whether or not force was used is not an element of such offense but rather is a "sentence enhancer". Since the jury in this case found appellant guilty of felonious sexual penetration pursuant to R.C. 2907.12(A)(1)(b), the jury next considered whether or not appellant purposely compelled his victim to submit by force or threat of force. Since the jury found that appellant compelled Crystal to submit by force or threat of force, appellant, pursuant to R.C. 2907.12(B) was sentenced to life. There is no dispute in this matter that, as to count 49, the victim was not less than thirteen years old at the time of the offense. Since the State, therefore, failed to prove beyond a reasonable doubt an essential element of the crime of felonious sexual penetration in violation of R.C. 2907.12(A)(1)(b), appellant's conviction for felonious sexual penetration must be reversed as against the manifest weight of the evidence.
 III
Appellant, in his third assignment of error, contends that the trial court committed plain error when it failed to bifurcate appellant's charges into two separate trials. Appellant specifically argues that the 89 counts involving Crystal should have been severed from the one count involving Corey, since "the Defendant's rights were prejudiced when the jury was simultaneously permitted to consider evidence involving both victims." We disagree. No motion to sever was ever filed by defense counsel. Pursuant to the case State v. Torres (1981),66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288, syllabus, a defendant, in order to prevail on his claim that the trial court erred in denying his motion to sever, has the burden of demonstrating three facts. He must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial. We find that by the appellant's failure to request a severance of the charges, he has waived that issue on appeal. (See footnote 1 in State v. Henry (1983), 4 Ohio St.3d 44 which sets forth that a defendant in a capital case must request a separate trial from his co-defendant at the trial court level or he fails to preserve the issue on appeal.) Even under a plain error analysis, we do not find that the conviction of the appellant for the one count dealing with Corey needs to be vacated and sent back for new trial. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91. Crim.R. 8(A) provides: "(A) Joinder of Offenses. Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of conduct.
"Joinder is to be liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials and diminish inconvenience to the witnesses." State v. Schaim (1993), 65 Ohio St.3d 51, 58. In order to have obtained a severance, the appellant would have had to demonstrate that joinder was prejudicial under Crim.R. 14. That Rule provides: "If it appears that a defendant * * * is prejudiced by a joinder of offenses * * * in an indictment, information or complaint, * * * the court shall order an election or separate trial of counts, * * * or provide such other relief as justice requires."
When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine 1) whether evidence of the other crimes would be admissible even if the counts were severed, and 2) if not, whether the evidence of each crime is simple and distinct. State v. Schaim, supra. at 59. In the case sub judice, we find that the trial court did not commit plain error in failing to sever the case into two separate trials. The rape of Crystal, which was alleged in count 90 of the indictment, and the attempted rape of Corey, alleged in count 89, occurred on the same night while Corey was spending the night at Crystal's home. The evidence produced at trial as to the offenses alleged in counts 89 and 90 was interlocking since the two offenses occurred during the same course of conduct and were clearly related. State v. Czajka (1995), 101 Ohio App.3d 564. Crystal testified that when appellant's attempts to rape Corey were unsuccessful, his attention turned to her. Moreover, since Corey observed appellant's sexual assault on Crystal and vice versa, both victims would have to testify at both trials if the counts were severed. Whereas Crystal's testimony would have been relevant to prove that appellant committed the alleged offense against Corey, the opposite is also true. In other words, if there had been a severance of the counts, counts 89 and 90 would have remained together but separate from the other counts. Under Revised Code2907.02(D) evidence of appellant's past sexual activity with Crystal would have been admissible against the appellant because it was material to a fact at issue. It is, however, arguable that much of appellant's past sexual activity with Crystal may have been so inflammatory that it would have been more prejudicial than probative. In that case, a trial judge would limit the testimony of appellant's past sexual activity with the victim, Crystal. However, in the case sub judice, all of the evidence of appellant's past sexual activity with Crystal came in. However, we still do not find reason to sustain this assignment of error. And that is because we can find plain error only if it is necessary to prevent a manifest miscarriage of justice. In this case, the trial started with 90 counts pending against the appellant. The trial court dismissed 70 counts after the appellee's case and 20 counts went to the jury. The jury, in spite of having heard testimony which dealt with sexual activity between appellant and Crystal since 1992 — 1993 came back with guilty verdicts on only five of the 90 counts. (Crystal was the victim in four of the five.) The jury did not convict the appellant of all charges. Therefore, it's clear the jury did not assume that the appellant had a propensity to commit criminal acts or that he deserved punishment regardless of whether he committed the crimes charged in the indictment. State v. Curry (1975), 43 Ohio St.2d 66, 68, 72 O.O. 2d 37, 38,330 N.E.2d 720, 723. In other words, in spite of the inflammatory nature of the evidence, the jury carefully analyzed the evidence as to each count. Since, even under a plain error standard of review we do not find that we need to vacate the conviction of the appellant on Count 89, dealing with the victim Corey, to prevent a manifest miscarriage of justice, we overrule appellant's third assignment of error.
 IV
In his fourth assignment of error, appellant argues that he received ineffective assistance of trial counsel. Appellant specifically points to his counsel's failure to file a motion for separate trials and his counsel's failure to use Crystal's prior testimony from the initial trial that ended in a mistrial to impeach her. A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S.Ct. 838, 122 L.Ed. 2d 180; Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. It is with this framework in mind that we address the instances of alleged ineffectiveness of counsel raised by appellant in the instant case. We will first address appellant's claim that trial counsel was ineffective when he failed to move to sever the one count dealing with the victim Corey from the 89 counts dealing with the victim Crystal. Based on our analysis of assignment of error III, we find that even if trial counsel's failure to move for a severance of trials on the counts dealing with different victims fell below an objective standard of reasonable representation, the appellant was not prejudiced by said failure. The jury demonstrated that it was able to discern the evidence on each charge and was able to analyze it in an objective way and was not influenced by the cumulative evidence against the appellant when they found appellant guilty on only 5 of the 20 counts presented to them. Therefore, we find that trial counsel's failure to move to sever the counts for trial did not constitute ineffective assistance of counsel. We will next address appellant's claim that trial counsel's failure to confront Crystal with her prior inconsistent statements constituted ineffective assistance of counsel. We agree with this claim. Crystal had given her entire testimony in the first trial before it ended in a mistrial. During that first trial, in September of 1997, Crystal, in regard to the time periods encompassed in Counts 49 and 73, testified she really could not remember what happened. In regard to the time period encompassed by Count 49 (1/1/96 — 4/1/96), Crystal testified that the appellant approached her and asked her for sexual favors but Crystal could not remember what happened during that time. (Transcript of 1997 Trial, pg. 72-73.) In regard to the time encompassed in Count 73 (10/1/95 — 12/1/95), Crystal testified in the first trial that the appellant made sexual advances toward her but Crystal could not "really remember" what happened nor the nature of the act. (T. 1997 trial, pg. 71-72.) At the second trial, Crystal testified to the following in regard to the time period covered in Count 49: "Q. Can you tell the jury what happened? A. I was in the living room asleep and he came out there and placed his mouth on my chest. Q. Did he do anything else? A. At that time? Q. Yes. A. He also inserted his fingers in my vagina. . . . . Q. Did he say anything to you when he left you? A. He told me I better not tell anybody or he'd kill me." (Transcript, 2nd Trial, page 69)
At the second trial, Crystal testified to the following in regard to the time period in Count 73: "A. . . . [appellant] took and grabbed ahold of me and took me in the back bedroom and he pulled down my underwear and shorts and had his mouth on my vagina and was touching my breast." (Transcript, 2nd trial, page 67.)
Crystal further testified in regard to this incident: "A. . . . I was like — I kept trying to get away from him and I told him that I would holler and I would tell my mom and he kept saying, he said that if I ever did tell that he was going to kill me and that he would tell mom that I'm the one that wanted him to do all this stuff and everything". (Transcript, 2nd trial, page 68.)
Count 49 was a Felonious Sexual Penetration charge and Count 73 was a rape charge. As charged, the appellant faced life in prison if convicted and, in fact he was convicted and sentenced to life in prison on each of these charges. The only evidence as to these specific incidents was the testimony of Crystal. Any trial strategy that did not include confronting Crystal with her prior inconsistent statements, when life in prison was at stake, fell below an objective standard of reasonable representation. We also find there is a "reasonable probability" that, but for counsel's unprofessional errors, the results of the proceeding would have been different when we use the standard that a "reasonable probability" is a probability sufficient to undermine confidence in the outcome. We, therefore, conclude that trial counsel's failure to confront Crystal with her prior inconsistent statements in regard to the time periods in Counts 49 and 73 constituted ineffective assistance of counsel. We next address appellant's claim that trial counsel's failure to confront Crystal with her inconsistent statements in regard to the time periods in Counts 85 and 89 constituted ineffective assistance of counsel. We disagree. The time period encompassed in each of counts 85 and 89 was 7/1/96 — 7/31/96. In the first trial, Crystal testified she was staying with her father for three or four weeks during the period from July 1, 1996, through July 31, 1996. (Transcript 1997 trial pg. 76-77.) During the second trial, Crystal testified that she went to see her father before July 11, 1996. (Transcript — 2nd trial, pg. 70). We do not find that appellant was prejudiced by the failure of trial counsel to confront the victim on this slight inconsistency in Crystal's testimonies. In addition, appellant did present witnesses in his case at the second trial to indicate that Crystal was at her father's house for much of the summer of 1996 and the jury heard that testimony and weighed it and still found appellant guilty on counts 85 and 89. Therefore, we do not find appellant was denied effective assistance of counsel in regard to the failure to confront Crystal on the inconsistent testimony she gave regarding the time she stayed with her father in the summer of 1996. In sum, we overrule appellant's fourth assignment of error in part and sustain it in part. We vacate the conviction in regard to count 73 (Rape) and remand this matter for a new trial on said count. (The analysis in regard to Count 49 is moot based on our decision on the second assignment of error.)
 V
Appellant, in his final assignment of error, asserts that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. Our first analysis under this assignment of error will focus on counts 69, 85 and 89. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. When applying the above standards of review to the case sub judice, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence or was against the manifest weight of the evidence. At trial, both Crystal and Corey testified in detail as to the sexual incidents involving appellant. As to count 69 (Rape), Crystal testified that appellant put his mouth on Crystal's vagina while Crystal "was hitting him trying to get him away from me." (Transcript — 2nd trial, pg. 63.) Crystal also testified that appellant's authority was similar to that of a father and Crystal would get hit if she did not obey appellant. (Transcript, 2nd Trial — pg. 41.) Crystal testified, that as early as 1993, appellant threatened to kill Crystal if she ever told what was being done to her. (Transcript — 2nd trial, pg. 48.) There was testimony that there were fist fights between appellant and Crystal's mother and that altercations were a frequent occurrence between them. As to Count 85 (Sexual Battery), Crystal testified that ". . . [appellant] pulled me in the bedroom and he pulled down my underwear and stuff and he forced his self on top of me." (Transcript — 2nd trial, pg. 70.) Crystal further admitted that appellant inserted his penis into Crystal's vagina. (Transcript — 2nd trial, pg. 70.) While appellant points to inconsistencies between the testimony of Corey, the victim, and Crystal, the witness, as to Count 89, the attempted rape, the jury had the opportunity to observe their demeanor and to assess their credibility. Clearly, the jury found them to be more credible witnesses than appellant, who also testified at trial. As to count 73, much of the evidence presented to the trial court has been set forth in our discussion of the fourth assignment of error. That evidence was the testimony of Crystal. The jury was in the best position to assess the witness' credibility and they chose to believe her. Count 49 has been discussed in the second assignment of error and we have determined that the conviction on that count was not supported by the manifest weight of the evidence as to the element regarding the age of the victim. Since, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crimes, set forth in Counts 69, 73, 85 and 89, were proven beyond a reasonable doubt and since there is no evidence that the jury, as trier of fact, clearly lost its way and created a manifest miscarriage of justice as to those counts, appellant's fifth assignment of error as to those counts is overruled. The Judgment of the Morrow County Court of Common Pleas is affirmed as to counts 69, 85 and 89.
The Judgment of the Morrow County Court of Common Pleas is reversed and remanded for new trial on count 73, and is reversed as to count 49.
Edwards, J. Wise, P.J. and Hoffman, J. concur.